The next case on the argument calendar, which will have some overlap in the topic for argument, United States v. Silva. Good morning once again, your honors. Vince Bronco, federal defenders at this time on behalf of Mr. Silva. Unless there are any further questions on the affirmative defense and voluntary abandonment, I'd like to go to Mr. Silva's independent issue. Mr. Silva presented the non-frivolous, straightforward argument that the guidelines weren't unreasonable because they double count. At first they give an adjustment 16 levels up for his prior conviction, and they give criminal history points, which makes it go over. Mr. Silva claimed that this created an unreasonable sentence under the 3553A factors. Because the district court never considered this part of the argument or explained why he was rejecting it, this case must be remanded. It seems like the major dispute the parties have is whether or not Mr. Silva made this double counting argument tied to the 3553A factors. If you look at his objections to the pre-sentence report, there's an entire section in two pages of argument called double counting prior convictions is unreasonable. He specifically says double counting violates 3553A's parsimony clause, cites Kimbrough and Gaul. Mr. Silva clearly made this argument that because there is a double adjustment that that's unfair under the guidelines, and there's nothing in the record to show that the district court considered, that argument is applied to the guidelines. Even at sentencing, the government did agree that this was a two-part argument, that one, there's a challenge to the guidelines, and two, it's a separate reason to depart downward or to vary under the 3553A. And any rationale the judge gave at sentencing related to the circumstances of the offense, not this more legal argument. And the government still hasn't cited a part of the record where the judge says, I recognize under 3553A that you made this double counting argument. It's just not there. Submit. And you obviously have a chance to respond. Good morning. May it please the Court. Mark Rahe for the United States. Your Honor, I would like to add some other points on the Taylor categorical issue as far as the affirmative defense. Okay. And of course, you can respond to those as well. Please, go ahead. Good. First off, to the extent that the defense wants to find support for a rule to consider affirmative defenses in these broad statements in Taylor and other cases that you look to conduct, that is not valid, because as applied over the last 15 years since Taylor, this Court has repeatedly stated that Taylor test goes to the elements. And it's interesting because as this Court is likely aware, the parties, in fact, the two offices currently before you are embroiled in a dispute right now as to whether California burglary counts as a categorical crime of violence under the same test. Has any of those instances, I mean, I've helped author cases under Taylor. We use some language. I don't recall a case where elements as opposed to affirmative defense made a difference. So if there's no such case, can we really say that the selection of the word elements is meant to exclude an affirmative defense? Well, I think you can, Your Honor, because that's basically hornbook criminal law. It goes all the way back to law school. An element is something, when you look at the burden of proof, as we all know, that's what the government has to prove. Affirmative defense has always been considered as something different. I'm not saying there aren't different. I'm saying the selection of the word elements does not necessarily reflect a considered judgment on the part of the Court that we mean only elements and not an affirmative defense because, indeed, you can find cases, and as was pointed out, at least one government brief that uses the word conduct. I don't think that was a conscious choice on the part of the government to say that, oh, we mean to embrace affirmative defenses. We choose words. And now this happens to be an instance where the words make a difference. Can you hold up anything for our benefit that shows that a considered judgment has been made with regard to that difference, either by our Court or other courts? Well, I think it is an open issue. This issue is only the case called Gomez-Mendez. It's cited in the briefs. It was from a year or two ago. I've been in this office nine years. That was the first time I've seen that argument raised by the defense. The issue ended up being resolved by the court saying, well, it started out with the statement that Taylor only applies to the elements, and then they said, well, even assuming you could consider affirmative defenses, the defense still loses because the defense in that case had not been shown to be adopted by a majority of cases. Beyond that, it is an open issue, of course, until the Charles case was decided a week or three weeks ago, and that's the one that we submitted in our 28-J. Now, the defense, the way they hang their hat on it, the distinction is, I think, very technical, such that Charles is the case that Your Honor is asking about, Judge Clifton, because if this is a pure issue of law, I don't see how Charles holding that affirmative defenses are not relevant wouldn't also apply here. So between Gomez-Mendez' speculative resistance to wanting to open the door of Taylor to consideration of affirmative defenses, as well as Charles' statement that it's not required, there is already authority in this circuit. But as the government also points out in our brief, I think this is, there are public policy reasons here. If we open the door to affirmative defenses, where will this end? And particularly in this case, I think it is especially interesting, this defendant at no point has ever claimed that he would have had a valid abandonment defense. That's a different, I mean, that's off the table for purposes of Taylor, right? Well, yes and no. There's a third case that came out a month ago, United States v. Guzman-Mata. In that case, the question was whether a federal alien smuggling defense or, excuse me, a federal alien smuggling conviction counted as a categorical crime of whatever the issue was there. There's a well-known statutory exception or affirmative defense that says if alien basically, it was Judge Randy Smith's opinion. He said affirmative defense, where there's been no claim that the defense would even have fallen under it, cannot disprove a categorical analysis. So I think that's another case, and I'm happy to submit a Rule 28J letter on that. Just submit a letter so we have it. Why don't you give me the name of the case again? Because offhand, I don't remember that one. It's United States v. Guzman-Mata, G-U-Z-M-A-N-hyphen-M-A-T-A. And what's the date of decision? It would have been in the last six weeks, Your Honor. Six weeks? Yeah. In fact, I don't know if it's even been given enough third sight yet, but. Okay. Armed with this, we can find it. But even beyond that, as we are, we'd like to do, Your Honor, let's just go ahead and assume that you can consider affirmative defenses. I think an important point to keep in mind here, and we've never disputed that there are 29 jurisdictions. That is a bare statistical majority. Twenty-nine out of how many? Well, out of 50 states, obviously. So that's almost 60%. In a presidential election, that's a landslide. Well, that's true. But I don't know that that standard is going to carry the day in tenure. And especially since it's already been pointed out by the panel, federal law, almost universally, not just the Ninth Circuit, but federal law, doesn't consider this defense. We cited a case in the United States. This is an interesting question to me, and I'm not sure I have an answer. Does the United States get to be counted as more than one jurisdiction for purposes of generic? Absolutely, Your Honor, and that's the Supreme Court. How come? The Supreme Court case of Gonzales v. Duaneus Alvarez. In that case, the Supreme Court specifically, the question was whether California aiding and abetting liability is overbroad. And this is cited in our brief. The Supreme Court specifically said, not only is California in accord with the majority of state jurisdictions, they also cite it to federal law. Well, I understand that, but that's not my question. Does the United States, does the federal statute on whatever the particular crime at issue is, count as more than one if we're trying to figure out how many jurisdictions do or do not? I doubt it. I think I would say it's one. I think it's one. That would be my view. Okay. Absolutely. Unless informed otherwise. One of the tricky things here is that it's Congress that's passing both the federal criminal statutes and, in this case, the criminal statute being enforced here, that is, attempted reentry after prior deportation. And conceptually, I feel like I'm entering the twilight zone when I try to figure out what was Congress's intent in making reference to a prior offense. Correct. And it's funny. I got that tenor from Judge Simpleton's question, too. It will lead to an absurd result to say that the federal, a federal attempt conviction wouldn't count for these purposes. And I know my opponent was reluctant to say whether he understood that question, but let it be clear, if you adopt his position, there's no doubt that a federal attempt conviction wouldn't count. It's United States v. Busse. We've cited our briefs. It's from 1974. That wouldn't count. And does that make sense? And I think absurd results are something to be avoided. Yeah, and I wish you'd tell that to Congress. And I'm not really addressing this particular statutory puzzle. I've got some others in mind. Well, I understand. I understand that, Your Honor. But, again, coming back, if there's the states are evenly divided. We cite a Second Circuit case Crowley. It says American jurisdictions historically divided over this issue. If there is a bare statistical majority against a clear federal minority, under the rule of United States v. Anderson, the federal law gets the tipping point. In United States v. Anderson, it was about interstate extortion. This Court found that where there's no clear state consensus, we look to federal law. In this case, all those decisions that we cited in our brief from the various circuits, as Judge Clifton pointed out, he's been unable to find a single federal circuit that has allowed this defense. So if this Court, that is also a rule to decide this case. Does each circuit count as one? Well. We're bigger. We're two. I would say even if you assume they don't. There are a whole bunch of circuits. I forget how many. 25 circuits. I don't know. I'll assume for my purposes it's just one. But I think it's interesting. My argument that federal law is against it would clearly be undercut if the defense could get up here and say, well, guess what? There's actually a conflict amongst the circuits. If the defense could get up here and say, well, guess what? There's actually a conflict amongst the circuits. He cannot do that. Counsel, are you going to address the argument that your opponent makes that somehow the procedures followed in imposing sentence is inadequate? Absolutely, Your Honor. That claim lacks merit. When you look at the actual record of this case, what is the whole point of the claim? It's not substantive unreasonableness. The defense is claiming procedural unreasonableness. And to basically distill that law, I think his position is this. If I, as a defendant, present a non-frivolous argument, a district court ought to be obligated to squarely address it. Well, as we point out in our briefing, despite the way the defense characterizes their claim on appeal, that claim that they're talking about was never clearly presented to the district court as a request for variance under 3553E. If you look at supplemental excerpt of record, pages 28 through 30, the first document the defense filed is the objections to the pre-sentence report. Therein, there is a two-page analysis based on Kimbrough, the same kind of analysis that the defense bar used to attack the crack cocaine guideline, that 201.2, it's not based on empirical evidence, it's not tethered to any analysis. And what is the remedy? The defense asks, and this you can see in excerpt of record pages 19 and 21, they say, decline to apply the plus 16 under the guidelines, and the other one is simply ignore it under the guidelines. After that, there is never any claim in the record by the defense that, guess what, Your Honor, even if you disagree with my construction of the guidelines, I want a variance under 3553 for this particular reason. In fact, in the defense's sentencing memorandum, which contains the, that's actually supplemental excerpt of record 28 through 30, that is their entire analysis under 3553A, you will find zero mention of the double counting argument. And then when you get to the actual sentencing hearing, the district court, when you look at that record, Your Honor, this court by now has seen enough procedural reasonableness challenges, I don't think it's going too far to say this is an ideal kind of record. This district court didn't just do a two-page analysis with the whole sentencing and get rid of it. He differentiated the analysis under the two grounds of first applying the guidelines, entertain argument on that, then he turned to the 3553A factors, entertain argument on that. In the 3553A factors, again, there's a couple references to double counting, but it was never on the grounds because double counting is bad because of Kimbrough and a lack of empirical data and 201.2 not being tethered to any rational reason. No, the only reference in which it came up was, well, Your Honor's seen a lot of 1326 cases, and you've seen a lot of plus 16s come and go. My client isn't the bad guy. He had the one conviction, attempted murder. He doesn't come back and commit more and more crimes, so for that reason, you should give him a variance. The district court considered all of those arguments, and that is an excerpt from record 85. District court says, I acknowledge your arguments. I don't think this Court now is prepared to hold. I don't think this Court's prior precedent has ever held that there are magic words that a district court has to use. In fact, it's reviewed under abusive discretion. If you look at the transcript of the sentencing. Roberts. I think we get the point. You're over time. Is there anything else you'd like to say in summing up? No. Unless Your Honor has any further questions, the government will submit.  Thank you. Thank you. Thank you. I'll be brief on the failure to explain, but I wanted to read two quotes from the sentencing hearing by defense counsel. And on that argument, the double counting, that the plus 16 counts, I do believe this issue is alive after Gall and Kimbrough. And again, I think once we are looking at Mr. Silber as an individual, hopefully that can resolve in some sort of as-applied manner. So he brings up the double counting in conjunction with Gall and Kimbrough. That was during the initial sentencing speech. During the later, which they were arguing, 3553A factors, defense counsel stated, and that is sort of my view on the double counting issue, that maybe it's right in certain cases and we do want that dual enhancement. I don't think it's right in Mr. Silber's case. So it was referenced in both, and the district court didn't reply to it. But the district court isn't required to reply to each of the arguments or identify each of the 3553 factors. The law is that from the record, we need to know why the district court rejected this argument. And there's nothing on the – Do you think it's a mystery? I mean, the district court actually did talk. This wasn't the tersest sentencing I've yet seen. No, he addressed many of the other arguments that defense counsel made that relate solely to the history and characteristics and how old the prior conviction was. But this was a more unique technical argument based on the guidelines, and we don't know the reason why. And the judge didn't explain why he rejected that argument. The judge said he thought that the guideline range was reasonable and made specific reference to Mr. Silber's somewhat violent background in coming back to the United States and committing crimes. He said in so many words he thought that the guideline range was sufficient but not greater than necessary. What requires him to say more than that? Rita says when – Rita, the judge said, markedly less, and Rita was affirmed. In Cardi, when someone makes a non-frivolous argument, the judge should respond. But let me get back to – Well, I don't see that in Rita any place. So if you think Rita supports that proposition, I need to know what Rita supports that proposition. When it says the record needs to reveal that the judge has explained why he's rejecting a non-frivolous argument, I mean, I guess my small minds can differ. I'd like to respond to some of the – Recapitulate for me how you see the double-counting argument. Recapitulate it? Okay. First, for the prior conviction of attempted murder, this one, without that conviction, the guideline range would have been based on a criminal history Category 2 and a base offense level 8. Because of this one conviction, it goes from an 8 to a 16. That's one lump. That's counting once. For that same conviction, he also got five – or six criminal history points, three for the conviction itself for being over 13 months, two for, I think, being on – and having committed the offense within two years after being released. So he gets six points, and that's the second counting of the same conviction. So because many of – because the prior conviction, the policy reasons behind both of these increase overlap, it becomes unreasonable under 3553A to just, you know, see the guideline grid and impose it. Because many of the factors that are built into both of these enhancements are accounted for. Thank you. Okay. First of all, as to the government's claim that this was – that Charles somehow held that affirmative defenses could not be considered, I'd like to read the actual holding of Charles. And that is, Charles has not presented any controlling authority demonstrating that a court must consider widely accepted common law defenses when conducting a categorical analysis. Accordingly, we conclude that the district court did not plainly err. So – This was on plain error review, right? Yeah. And Charles also quotes its understanding of the plain error review. An error cannot be plain where there is no controlling authority on point and where most closely analogous precedence leads to conflicting results. So this is still open after Charles. And the Guzman case, which I have not read? I've read it a while ago, and I'm talking off the top of my head, and I'd like to respond in a formal 428-J letter. But my initial response is I believe Guzman-Mata was a case that's dealing specifically in the immigration context under Nihishawan of whether or not, because it's specifically in the statute that they say – and in the statute it brings in this affirmative defense. And what – in Nihishawan and in Mata, they said this is one of the type of offenses that you don't do the categorical type analysis and you look at the outside context. We'll read it and make sure that we've got it in hand, so don't worry too much. Unless we ask for a specific response from you, don't worry about it. We'll read it. Okay. Another thing is one of the things that this court and government has focused on is Congress's intent of using this word attempt. But we have to remember what this challenges is to the Guidelines Commission, and it's their interpretation of the word intent. So they have no attempt statute per se, and they're aware when they write the guidelines that we use the Taylor categorical analysis, and which goes back to they haven't written what's the definition of attempt, so we look to what is the common meaning or the generic meaning of attempt. And because most jurisdictions follow it, that is the key. And that leads me to my final point is the government's reliance on this Anderson case where as I get their defense, if it's a close call, even if it's in the defense's favor, we go to the federal statute. That's not what Anderson held or the subsequent case. Basically, in Anderson, they're trying to determine, I believe it's the meaning of the word extortion. And with extortion, there are several different, substantively different ways to define how an extortion is committed. It's not like this defense here where you can go to a common denominator that does exist throughout the states. So when they said, well, when there's like three or four diverging view and there's no majority, we can look to what Congress has written in their statute since Anderson, of course, was a Congress-based interpretation rather than a guideline interpretation. With that, I'll submit. Okay. Thank you very much. I'll say this as to all attorneys who argued both the prior case and this one, a complicated issue and good arguments from everyone. Thank you very much. The United States v. Silva is now submitted for decision.
judges: Singleton, Fletcher W. , Clifton